Good morning, your honors, and thank you. I'd like to reserve two minutes for rebuttal, please. I also had a little internet glitch for a second. If we get disconnected, I'll call him with a hard line right away. Very well. With that, your honors, thank you very much. Mark Shinderman of Milbank on behalf of the committee. The committee consists of health care workers, doctors, nurses, other health care providers, hospital workers, as well as and toward claimants. With your permission, your honors, I want to break the presentation into two parts. A brief discussion of what's underlying the appeal and then the specific issues on the appeal. With respect to the background, your honor, Bankruptcy Code 364D permits a debtor to borrow money on a super priority basis ahead of pre-petition secured claims are adequately protected. 364 does not grant adequate protection. It says adequate protection is a condition precedent to the granting of a super priority dip loan. Adequate protection is itself governed by 361 of the bankruptcy. According to the case law, and it's not a dispute, is that adequate protection may be found by an equity question, the value of stipulated and the court found that the secured creditors at the time of this order were over secured. The problem here, your honors, is notwithstanding the findings of the court and the representations of the debtors. They sought the consent of the secured parties to the priming lien. And the secured parties, the pre-petition lenders, agreed to this post-petition priming provided the debtor waived sections 506C and 552 of the Bankruptcy Code. 506C, in essence, provides that a debtor can seek to surcharge the collateral of a secured creditor for the cost of preserving that collateral. And 552 of the Bankruptcy Code says that effectively, if a secured creditor recognizes going concern value, recognizes post-petition value on his and thus the unsecured creditors. What these mean, in effect, is that if the secured creditor wanted to take advantage of a going concern, that would effectively have to pay for it, that the cost would be potentially reimbursable out of their gain. If there was going concern premium over liquidation, the secured creditors might have to share that with the estate. Here, the creditors clearly, the secured creditors clearly want to preserve that value. They're not hospital operators. They couldn't simply foreclose and step into the shoes. And closing down, again, the record is clear, closing down the hospitals would have cost a lot of money and impaired the value of the collateral. So the secured creditors not only represented that they were oversecured, but also that they had a reason for the hospitals to continue to operate. Here's then where the dispute arises. The debtor agreed to waive those two very without having any evidence about what the value of these waivers would be. Who would benefit? What would the cost be? How much would the unsecureds effectively be paying the estate to keep the business as a going concern? What benefit would it inure to the secured creditors? What we do know is that the secured creditors, the court found, were oversecured. With that background, I'd like to turn to the merits charge. And basically, there are two issues, and they're both narrow. One is whether you appeal a statutory moot under 364E, as found by the District Court. And whether or not the District Court, nonetheless, should have made an inquiry as to whether relief was available. With respect to 364E... Counsel, with respect to your second question, what case law do you cite for the fact that the court had to address both questions? First, the mootness question under 364E, and then go into equitable mootness. It's your position they had to do both of those things. What case law supports that position? The Sweden case, Your Honor, was cited from the Sixth Circuit. There's no Ninth Circuit. There's no Ninth Circuit. That is correct, Your Honor. And part of your argument here is that the Ninth Circuit cases, on which the lower court relied in terms of the mootness argument with respect to 364E, N. Ray Adams Apple and N. Ray Cooper Commons, it's your position that those are wrongly decided, correct? No, Your Honor. Actually, whether they're rightly decided or wrongly decided, it's your position that those are wrongly decided, correct? No, Your Honor. In the case of Adams Apple, there was only a post-petition loan. There was no pre-petition loan. And in Adams Apple, the pre-petition lender and the post-petition lender were one and the same. Now, those cases, Adams Apple has been criticized. And in a subsequent Ninth Circuit case, Sunrunner Marine, the Ninth Circuit made clear that 364E applies only to the protection of the post-petition loan and the grant of the post-petition liens to the post-petition loan. And in fact, 364 itself doesn't speak to adequate protection. It merely requires it. 361 does not have the same provision as 364E, protecting the grant of administrative priority. In fact, the Fountainbleu case makes it very clear that adequate protection is subject to review. But counsel, looking at the Cooper Commons case, there's language in there saying that by the courts. You're asking us to interpret it narrowly. Can you talk us somehow around that language in Cooper Commons? Yes, Your Honor. I have several different parts. First, Cooper only involved a post-petition lender, not a pre-petition claim. Factually different. Second, Sunrunner Marine in the Ninth Circuit case says you do interpret it narrowly, 364 explicitly on its terms. That's what I really want to focus on. 364D, as in David, provides for adequate protection as a condition precedent. Adequate protection is not granted under 364. 364E does not, the reversal on appeal, does not speak to adequate protection. It speaks only to protecting, very plain language terms, only protecting the post-petition borrower and the liens granted to the post-petition borrower. 364D refers to 361, adequate protection, and adequate protection does not have the same provision. So, Your Honor, in further answer of this, again, a plain textual reading, Congress knows, can you guys hear me? Am I freezing? Okay. Okay. Congress, when it wanted to preserve, eliminate the ability to appeal, made it express. 364E, 363M regarding the sale of assets says you cannot reverse a grant of a sale because that would hurt the buyer. 364E says you cannot reverse the grant of a lien to a post-petition lender because that would hurt someone who lends money to the debtor post-petition. 361 governing adequate protection, referred by 364, doesn't have the same provision. So, Your Honor, that's how I would distinguish it. Can I ask you one question, counsel, about the order, the final DIP order? You appealed the waivers, but paragraph 28 of that order gave PSC, directly gave them the protections of 364E. You didn't appeal that generally. In an effort not to upset the applicant with the DIP lender, and the DIP lender entered into a stipulation that allowed the appeal to go forward, we called out the specific provisions, but the court in its order cannot grant relief that's not found in the code, number one. Number two, the motion seeking that relief did not say the adequate protection would be supported or protected under 364E. Simply did not refer to that in the motion, was not relief sought, and the language of the statute doesn't allow you to grant protection, 364E protection, in connection with that. Do you want to reserve? I guess, Your Honor, I'd like to reserve the last few minutes. Thank you. Okay. Mr. Montgomery, one second until your microphone turns on. You're all clear, Mr. Montgomery. Thank you, Judge Owens, and good morning. Claude Montgomery from Denton's USLLP for the Barrie Health Systems of California, Inc., the Chapter 11 debtors, and the appealee. I think that we should focus for the moment on the importance of the policy, a question that was dealt with in the past, and thus the need to protect all of the incidental attributes of any concessions needed from the various parties in the case to achieve the investment of fresh capital. I think this is therefore quite distinguishable from the Sunrunner situation in which the court there said it was the grant of pure payments under 365 after the first order had been reversed that were not subject to protections under 364E. That is completely different from the current situation in which it is all of the concessions given by the prepetition secured lenders because the dip lender wanted consent. It was totally rational for the dip lender to want consent as it did expressly in the dip credit agreement sections 3.1A and 3.3A and B. The reason it would want such concessions is it did not want to be involved in the very litigation that the committee wants to bring about what is the value of either adequate protection or the value of the cushion that might exist to protect the prepetition secured lenders. This case has a very straightforward record on the question of mootness. There is no doubt that the Patrick Coffey declaration established the good faith and bona fides of the dip lender. There has been no challenge to the good faith of the prepetition lenders. There is no challenge to the good faith of the debtor so the entire transaction was surrounded by good faith. In addition your honor there is no doubt that the committee did not seek a stay either from the bankruptcy court or from the district court or for that matter even this court and as the court has acknowledged in other situations the effort to seek a stay is going to challenge the merits where either statutory mootness is at play or equitable mootness is in play. The Thorpe insulation decision I think is expressive on that because Thorpe insulation I think stands for the proposition that the failure to abstain a stay is not preclusive only where the appellant was diligent in seeking a stay and was turned down at the appellate level in that case twice your honor. I think the policy here is supported by the fact that the prepetition secured creditors did not consent easily. The record shows that they filed reservations of rights. They actually fought over issues at the final dip hearing regarding the whether or not the adequate protection being provided was consistent with the inter-creditor agreement that had been in place and for the committee to at this court to say that the failure to seek a stay is irrelevant means essentially that they were willing to let the borrower the lender put in fresh capital policy under 364. They were willing to let the prepetition lenders prepetition collateral be used to repay and support the post-petition lending and they were not willing to take the chance that the entire case should simply shut down. With respect to the dip lender stipulation that the committee referred to I might note for the court that that was uh that document well after the bankruptcy court had rendered its decision well after the notice of appeal by the committee had been filed but before the record had closed with respect to the uh dip order the Swinerton 7052 motion kept the record alive for revision of the final dip order and in fact the court did revise the final dip order to meet the needs of Swinerton on February 4. That also appears in the record so the the committee having having sought a stipulation I'm sorry councilman did you did your client consent to that order no sir no ma'am uh we are not a signatory uh to that uh order and specifically the committee did not seek bankruptcy court approval so there was no opportunity for either the debtor or the pre-petition secured creditors to challenge or support so the specific citation of the specific statement the committee makes in its brief is incorrect so the debtor did not consent that's correct we were not asked to consent therefore we did not consent and we were not asked to file pleading and support or opposition because no support or opposition was sought okay so your honor I think that's a very uh timely uh in the sense that the committee tries to persuade you that the dip lender stipulation as it's referred to is the best evidence of the lender's intent I suggest to you that a stipulation made four months after the final dip order was approved can't be the best evidence of the lender's and is contrary in its suggestion to the actual terms of the dip credit agreement which as I've indicated before at sections 3.1 and 3.3 a and b clearly say the non-opposition or consent of the committee is required thank you very much council unless my colleagues have any further questions for Mr Montgomery we'll go ahead and move on to a council for UMB bank thank you your honor thank you your honor uh paul ricotta of mince leaven for UMB bank and wells fargo bank your honor we filed a joint brief along with the other appellee which is u.s bank and although that council's uh not going to take up any additional time I am authorized to argue on their behalf with respect to that joint brief um your honor um I think it's well known of course that this panel has the power and the ability to affirm the district court decision on any ground you've heard uh two of them or at least a long discussion about statutory mootness also argued in the brief uh as uh judge amen I believe uh asked about equitable mootness I would like to suggest that there's a third way for this panel to affirm the district court's decision and that is to reach the merits and the reason that you can reach the merits as I said is because this panel has the authority under ninth circuit precedent to affirm on any basis and we believe that the merits are crystal clear here and easily support affirmance of the district court and specifically it's this the court can deny the appeal on the grounds that the bankruptcy court did not abuse its discretion in approving the grand bargain the bargain between the parties which included the waivers as part of the adequate protection package and we believe the court should reach that because first of all those merits were fully briefed at the district court level that entire briefing is part of the record on appeal here at the ninth circuit if it's remanded the district court what may be instructed for example if this court determines that the appeals not moot the district court may determine uh that matter on the merits but there there shouldn't be any additional arguments other than what's already in the briefing and the decision on the merits then would probably be appealed back up to this court and that would just create unnecessary and duplicative proceedings so we would urge this court to also consider if it's not going to affirm on the on the mootness grounds to also consider reaching the merits I would note that the committee decided to uh brief very very little about the merits but your honors that is not that's their strategic decision we are brief included merits and mootness so they could have done the same let me turn to those merits very simply because we do say that they are that's easily supportable and that is if you look at the abuse of discretion standard and that comes from the sunny mean case which we cited in our brief the court this panel shouldn't reverse unless it has a definite and firm conviction that the that the bankruptcy court committed a clear error of judgment the question isn't whether the bankruptcy court could have or even might have made a different decision or whether the members of this panel might have made a different decision but rather whether the decision of a bankruptcy court was definitively a clear error and we believe the bankruptcy court was well within that broad spectrum that governs court's discretion to determine that the pre-petition secure creditors were entitled to the adequate protection package which as I said was a grand bargain in return for their consent to the final dip order which primed their otherwise first priority mortgage which is not being contested by the way by the committee to the tune of one up to 185 million dollars and in return for that on the other side of the coin the other parties received benefits mr montgomery's alluded to one of them and that is that the committee was able to take the risk perhaps that there was going to be proceeds from the unsecured creditors left at the end of the day because the dip lending allowed the case to continue as a going concern not as a liquidation it also enabled thousands of patients to continue to receive health care and hundreds of doctors and nurses to continue to be employed so the essence of that compromise and that's really a settlement and compromise between the parties that's all that the bankruptcy court was doing and in in that compromise by the way um your honors happens virtually every day of the week in almost every significant bankruptcy case in this country there are these types of approve them and they are and then the case proceeds in that manner what makes it even more compelling here was what mr montgomery alluded to just a second ago and that is that the credit agreement in this case required the consent of the pre-petition secured creditors for the dip lending to go forward not only does that buttress the fact that this was a fair compromise between the parties approved in the discretion of the bankruptcy court but it also of course uh lends of a crucial fact as to why 364e applies because our consent was necessary in order for the dip excuse me the dip loan to go forward council can i ask you one question i'm sorry to interrupt you but you returned to 364e and its protections um do you have any authority where uh that provision has been uh extended to non-dip lenders um well your honor the the whole point of the um adams apple case was where that protection was extended to a pre-petition uh loan in adams apple and i want to make sure that the court understands at least what my clients believe the differentiating factor is and why what the is actually not correct adam's apple doesn't stand for the proposition there's this so-called dual lender rule there's that's made up there's no dual lender rule there's no rule in adam's apple that says that if you have one lender that provides both the pre-petition and the post-petition loan that that somehow means that you can't apply adam's apple to a circumstance in which there's a lender on the pre-petition loan that's not the same letter on the post-petition loan the lender the issue in adam's apple and the rule coming out of adam's apple is whether or not there's a connection between the two whether or not in order to get the dip loan the post-petition loan there had to be some benefit some quid pro quo provided to the pre-petition loan and in the ninth circuit which judge owens correctly said is got a broad interpretation of 364b unlike some circuits so this is split in the circuits but this is our rule in under the ninth circuit precedent if so long as one of the of those two loans are conditional upon each other both loans should be entitled to the protections of 364e to the extent that there was that quid pro quo that's exactly what happened here exactly what happened here under 3.3b of the credit agreement our consent was required it was a condition to get the dip loan that we get this benefit package this adequate protection package as bankruptcy lawyers call it with respect to the pre-petition loan same thing that happened in adam's apple so judge hayman the answer to your question is yes adam's apple is a circumstance is an example it's controlling here in which the pre-petition loan was was protected by 364e just like the post-petition loan was protected thank you very much council for that we'll now turn to rebuttal and we're going to give you some extra time uh go ahead and give uh council three minutes one second mr shenderman mr shenderman we can't hear you you know my wife likes that thank you um first the grand bargain to which mr ricotta spoke is very important there's nothing in the statute of 364e that says stuff that is otherwise subject to review is no longer subject to review if we connect it to 364 there's no dispute that the 361 grant of adequate protection is subject to review lumping it with the post-petition dip loan doesn't change that there's no case cited by the appellees in which the post-petition lender the pre-petition lender were different where 364 insulated the review second the sunrunner marine case actually talks about where there is a package the 365 cure payments in connection with the dip loan the sunrunner marine case said 364e applies explicitly only to the dip loan and not to the ancillary protections afforded there under so summary a case after adam's apple contracts adam's apple third the plain language of the statute couldn't be more clear 364e does not offer adequate protection it refers only to the post-petition lender and the post-petition relief afforded the lender here the stipulation we talked about was designed specifically not to bind the parties but to make sure as between the committee and the lender the lender did not object to the appeal going forward and that's what the stipulation said but more importantly the dip lender has been paid off the protections afforded the dip lender under 364e are no longer relevant the dip lender no longer requires them so again we're trying to shoot hornet the adequate protection to non-review under 364 weren't they paid off and council weren't they paid off at least in part by what um uh the intervenors of the psc uh agreed to in other words that deal only went forward because of the um concessions that uh the secure blenders agreed to your honor the under the statute the secure credits were entitled to adequate protection they were found to have be adequately protected by an equity cushion not withstand with that they gave consent the consent was predicated on waivers there was no inquiry made as to the cost or benefit of those waivers it was inappropriate to make that decision their liens were subordinated they were allowed to use their cash collateral all of that happened but your honor none of that none of that shows that the contract a result that if they simply liquidated at the time what was not tested is whether or not the secured creditors wouldn't have consented but for that provision or for those benefits that were bestowed upon them again because they were non-hospital operators they couldn't simply foreclose on a collateral and take it back um the the there's nothing in the next circuit going back to a point you raised your honor uh judge about um about whether or not equitable immuteness is e-finding the thorpe and trans west case talks about the totality of the circumstance and granting justice um finding this seeking even under equitable witness one of the important considerations is seeking a stay and you made no effort at all here to seek a stay correct no reason to stop the dip loan from going forward but the uh the opposition to the adequate protection was open and notorious it was not hidden it was not plain right we indicated from the day one that we objected to it we would appeal it we timely appealed it the security creditors understood the security but the real question under equitable witness why didn't you seek a stay why didn't you seek a stay in this you know then this issue would have been in your favor why didn't you seek a stay here your honor because it was beneficial for the deal to go through for your clients one one in our experience is seeking to stay of a dip loan would have been futile to the dip loan was necessary to go forward three of the secure creditors were not prejudiced by not seeking to stay under equitable witness pumped and dumped he's been so irreparably harmed that we can't put it together and the answer is we can't put it together there has been no harm sustained by the last couple points is in the briefing by the debtor and umb bank about adequate protection the sites they make are solely to 361 they say collier's on 361 cases under 361 none under 364 and finally the reason we didn't brief the merits for this court is one the appellate the issue on appeal was 364e second is um if your honors want to consider the merits we're happy to submit within two weeks on the existing record we don't need to supplement the record three is we received two large briefs in opposition to our opening brief we asked for extra pages your honors correctly and properly under the law rejected that but it meant there was no opportunity to address the merits argument for these reasons your honor we think the 364e finding the district court should be overruled thank you your honor thank you counsel thank you to all counsel for their briefing and argument we appreciate your patience with our system it worked for the most part pretty well today so thank you to all of you and court today is adjourned so you may gavel us out this court for this session stands adjourned
judges: Fernandez, Owens, Amon